UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

VICTOR LAMAR WATERFORD,

       Petitioner,

                                    CASE NO. 2:11-CV-10664
v.                               JUDGE AVERN COHN
                                    MAGISTRATE JUDGE PAUL KOMIVES

GREG McQUIGGIN,

       Respondent.
                                      /

**REPORT AND RECOMMENDATION ON PETITIONER'S HABEAS APPLICATION
(docket #1) and RESPONDENT'S MOTION FOR SUMMARY JUDGMENT (docket #12)**

I.      RECOMMENDATION: The Court should conclude that petitioner's application for the writ of habeas corpus is barred by the one year statute of limitations contained in 28 U.S.C. § 2244(d). Accordingly, the Court should grant respondent's motion for summary judgment (docket #12). If the Court accepts this recommendation, the Court should also deny petitioner a certificate of appealability.

II.     REPORT:

A.     *Procedural Background*

Petitioner Victor Lamar Waterford is a state prisoner, currently confined at the Chippewa Correctional Facility in Kincheloe, Michigan. With respect to the conviction which petitioner challenges here, petitioner is serving a sentence of 560-840 months' imprisonment, consecutive to a term of two years' imprisonment, imposed following his 1991 convictions for second degree murder and possession of a firearm during the commission of a felony. Petitioner's application and the state court record reveal the following time line of the state court proceedings:

- On April 18, 1991, petitioner was convicted of second degree murder and felony-firearm following a jury trial in the Genesee County Circuit Court. Petitioner was

  sentenced on July 21, 1991.

- Petitioner, through counsel, filed a delayed application for leave to appeal in the Michigan Court of Appeals, raising claims of improper admission of evidence, lack of jurisdiction to sentence on the felony firearm charge, and improper departure from the sentencing guidelines. On May 6, 1993, the court of appeals entered an order vacating petitioner's sentence on the felony-firearm charge, and remanding for resentencing so that the trial court could prepare a sentencing guidelines departure form. *See People v. Waterford*, No. 157724 (Mich. Ct. App. May 6, 1993).

- The prosecutor filed an application for leave to appeal in the Michigan Supreme Court. On September 27, 1993, the Supreme Court summarily reversed and reinstated petitioner's felony-firearm conviction. The Supreme Court also remanded the matter to the trial court for preparation of a guidelines departure form, but held that resentencing was not required. *See People v. Waterford*, 444 Mich. 853, 509 N.W.2d 153 (1993).

- On November 30, 1995, petitioner filed a motion for relief from judgment in the trial court pursuant to MICH. CT. R. 6.500-.509. The trial court denied the motion on January 12, 1996. It does not appear that petitioner filed an appeal from the trial court's denial of his motion.

- On April 1, 2009, petitioner filed a second motion for relief from judgment in the trial court, raising the claims that form the basis of his habeas application. The trial court denied the motion on April 17, 2009, concluding that the motion was a successive one prohibited by MICH. CT. R. 6.502(G). *See People v. Weatherford*, No. 91-44518-FC (Genesee County, Mich., Cir. Ct. Apr. 17, 2009).

- Petitioner sought leave to appeal in the Michigan Court of Appeals. The court of appeals denied petitioner's application in a standard order on application on September 18, 2009. *See People v. Waterford*, No. 292859 (Mich. Ct. App. Sept. 18, 2009).

- Petitioner thereafter sought leave to appeal in the Michigan Supreme Court. That court denied petitioner's application for leave to appeal in a standard order on March 29, 2010. *See People v. Waterford*, 485 Mich. 1126, 780 N.W.2d 261 (2010).

In addition to these proceedings which relate to the conviction being challenged in petitioner's habeas application, petitioner is serving multiple sentences imposed as a result of his 1990 convictions in the Wayne County Circuit court for first degree murder, assault with intent to commit murder, armed robbery, kidnapping, first degree criminal sexual conduct, and felony-firearm. Those sentences

include a sentence of life imprisonment without possibility of parole. On August 1, 1997, petitioner filed a habeas application in this Court challenging those convictions, docketed as Case No. 97-CV-73773. The Court denied that petition on October 1, 1999. Petitioner did not appeal that decision to the Sixth Circuit.

On January 15, 2011, petitioner filed this application for the writ of habeas corpus pursuant to 28 U.S.C. § 2254.[1] As grounds for the writ, petitioner claims the trial court lacked jurisdiction to convict him of second degree murder, and that new evidence establishes his innocence. Respondent filed a motion for summary judgment on August 25, 2011, arguing that petitioner's habeas application is untimely. Respondent also contends that the Court should deny the petition based on the concurrent sentence doctrine. Petitioner filed a reply in support of his habeas petition on September 27, 2011. For the reasons that follow, the Court should grant respondent's motion for summary judgment.

B.  *Concurrent Sentence Doctrine*

Respondent first argues that the Court should decline to consider petitioner's habeas claims under the concurrent sentencing doctrine, because petitioner is serving a separate sentence of life imprisonment without possibility of parole. Under the "concurrent sentencing doctrine," a "court may decline to hear a substantive challenge to a conviction when the sentence on the challenged conviction is being served concurrently with an equal or longer sentence on a valid conviction." *Dale v. Haeberlin*, 878 F.2d 930, 935 n.3 (6th Cir. 1989); *see also*, *United States v. Hughes*, 964 F.2d

---

[1] Although petitioner's application is file-stamped February 17, 2011, it is well-established that a habeas petition is deemed "filed" for purposes of the statute of limitations on the date the petitioner gives his motion to prison officials for mailing. *See In re Sims*, 111 F.3d 45, 47 (6th Cir. 1997); *Beckovich v. Coyle*, 22 F. Supp. 2d 722, 723 (N.D. Ohio 1998); *cf. Houston v. Lack*, 487 U.S. 266, 270 (1988). Petitioner's application is signed and dated January 15, 2011; however, it also indicates that it was placed in the prison mailing system on February 15, 2011. Because it does not alter the result, I give petitioner the benefit of the doubt and assume that it was given to prison officials for mailing, and thus 'filed," on the earliest possible date, January 15, 2011.

536, 541 (6th Cir. 1992). The doctrine is a discretionary one, *see Hughes*, 964 F.2d at 541, and courts "are admittedly hesitant to apply this doctrine." *Dale*, 878 F.2d at 935 n.3; *see also*, *Winn v. Renico*, 175 Fed. Appx. 728, 732 (6th Cir. 2006).. The doctrine is applicable only "when there is *no possibility* of adverse 'collateral consequences' if the convictions stand." *Winn*, 175 Fed. Appx. at 732 (emphasis added); *see also*, *Dale*, 878 F.2d at 935 n.3; *Wilson v. Straub*, 185 F. Supp. 2d 766, 769 (E.D. Mich. 2002) (Hood, J.). The Court should presume that petitioner's conviction carries adverse collateral consequences, *see Wilson*, 185 F. Supp. 2d at 769-70 (citing *Sibron v. New York*, 392 U.S. 40, 55 (1968)); *see also*, *Spencer v. Kemna*, 523 U.S. 1, 8-9 (1998) (noting that the Court generally presumes that a criminal conviction carries adverse collateral consequences beyond the sentence imposed), and respondent bears a heavy "burden of showing that the risk of collateral consequences is too slight to justify review." *Suarez v. Bennett*, 207 Fed. Appx. 114, 115 (2d Cir. 2006). The concurrent sentence doctrine is not jurisdictional–that is, the existence of concurrent sentences does not render a challenge to one sentence moot and therefore outside the Court's jurisdiction. *See United States v. Williams*, 128 S. Ct. 1830, 1838 n.1 (2008); *Benton v. Maryland*, 395 U.S. 784, 791 (1969).

As noted in *Dale*, there must be "*no* possibility of adverse 'collateral consequences'" before the concurrent sentencing doctrine will be applied. *Dale*, 878 F.2d at n.3 (emphasis added). Here, it cannot be said that there is *no* possibility of adverse consequences. There is a possibility, however slight, that petitioner's other convictions here will no longer result in his imprisonment. Although petitioner has already sought and been denied habeas relief on his first degree murder conviction, however unlikely it remains possible that his conviction could be overturned in a subsequent state postconviction proceedings, or that petitioner could obtain clemency or pardon on this conviction. Prior to adoption of the Antiterrorism and Effective Death Penalty Act of 1996

4

(AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (Apr. 26, 1996), such slight possibilities of collateral consequences could be adequately accounted for by dismissing the petition pursuant to the concurrent sentencing doctrine, but making such a dismissal without prejudice to the petitioner refiling his or her application should the unlikely collateral consequences occur. For example, this was the course taken by the court in *Scott v. Louisiana*, 934 F.2d 631, 635 (5th Cir. 1991). However, even if this Court were to take the approach of the *Scott* court, application of the concurrent sentencing doctrine to petitioner's application will have the effect of forever precluding petitioner from challenging this conviction, even if the greater sentence is commuted or otherwise becomes invalid, due to the one year limitations period of the AEDPA. 28 U.S.C. § 2244(d)(1). Accordingly, the Court should decline respondent's invitation to apply the concurrent sentence doctrine.

C. *Statute of Limitations*

The Court should conclude, however, that petitioner's application is barred by the statute of limitations.

1. *Statutory Timeliness and Tolling*

Respondent argues that petitioner's application is barred by the one-year statute of limitations governing habeas petitions. On April 24, 1996, President Clinton signed into law the Antiterrorism and Effective Death Penalty Act (AEDPA), Pub. L. No. 104-132, 110 Stat. 1220 (Apr. 24, 1996). In relevant part, the AEDPA amended 28 U.S.C. § 2244 to provide a one year statute of limitations for habeas petitions. Specifically, the statute as amended by the AEDPA provides:

> (1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of–
> (A) the date on which the judgment became final by the conclusion of direct review of the expiration of the time for seeking such review;

>     (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>     (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>     (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
>     (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d).[2]

As the language of the statute indicates, there are four possible dates on which the limitations period may begin to run. The claims asserted in petitioner's habeas application do not implicate subparagraphs (B) through (D), and petitioner does not contends that any of these provisions is applicable here. Thus the commencement date established by subparagraph (A) applies here. Under subparagraph (A) of § 2244(d),

> a judgment of conviction does not become "final" . . . until the Supreme Court affirms the conviction and sentence on the merits or denies a timely filed petition for certiorari.
>     In addition, if a defendant does not file a certiorari petition, the judgment of conviction does not become "final" until the time for seeking certiorari review expires.

*Kapral v. United States*, 166 F.3d 565, 570-71 (3d Cir. 1999); *see also*, *United States v. Simmonds*, 111 F.3d 737, 744 (10th Cir. 1997) (conviction became final upon denial of certiorari); *Torres v. Irvin*, 33 F. Supp. 2d 257, 271 (S.D.N.Y. 1998) ("[A] judgment of conviction only becomes final upon the expiration of the ninety days to seek a writ of certiorari from the United States Supreme Court."); *United States v. Dorsey*, 988 F. Supp. 917, 918 (D. Md. 1998) (same); *cf. Penry v. Lynaugh*, 492 U.S.

---

[2]The AEDPA codified a one-year statute of limitations provision for motions to vacate federal convictions brought under 28 U.S.C. § 2255 which is nearly identical to the one found in § 2244(d)(1). *See* 28 U.S.C. § 2255 para. 6. Accordingly, cases discussing the § 2255 statute of limitations are applicable here.

302, 314 (1989) (for purpose of determining whether application of new rule of law would be an impermissible retroactive application to a case which has already become final, conviction becomes final upon denial of the defendant's petition for certiorari); *Griffith v. Kentucky*, 479 U.S. 314, 321 n.6 (1987) ("By 'final,' we mean a case in which a judgment of conviction has been rendered, the availability of appeal exhausted, and the time for a petition for certiorari elapsed or a petition for certiorari finally denied.").

Here, petitioner's direct appeal concluded in 1993 when the Michigan Supreme Court reinstated his sentence. Because petitioner's conviction became final prior to the enactment of the AEDPA, he had one year from the effective date of the Act, or until April 24, 1997, to file his habeas application. *See McClendon v. Sherman*, 329 F.3d 490, 494-95 (6th Cir. 2003); *Cook v. Stegall*, 295 F.3d 517, 519 (6th Cir. 2002). Here, petitioner's application was not filed until nearly 14 years after the expiration of the limitations period. Thus, the petition is untimely, unless the limitations period was tolled for any reason.

Under § 2244(d)(2), the limitations period is tolled for "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending[.]" Petitioner's first motion for relief from judgment was filed in November 1995, and the proceedings with respect to that motion concluded in January 1996. By this point, the limitations period had not yet begun to run, so petitioner still had one full year in which to file beginning on April 24, 1996. Petitioner's second motion for relief from judgment was filed in the trial court on April 1, 2009. By this time, however, the limitations period had been expired for nearly 12 years. It is well established that subsection (d)(2) is a tolling provision and therefore a post-conviction motion only pauses the limitations clock; it "does not reset the date from which the one-year statute of limitations begins to run." *Smith v. McGinnis*, 208 F.2d 13, 17 (2d Cir. 2000); *see also*,

7

*Brooks v. McKee*, 307 F. Supp. 2d 902, 905 (E.D. Mich. 2004) (Gadola, J.). Because petitioner's postconviction motion was filed after the limitations period had expired, there was no time remaining on the limitations period to toll, and thus petitioner's application is untimely.[3]

2.   *Petitioner's Arguments*

Petitioner does not quarrel with the foregoing calculation. Rather, petitioner appears to argue that he is entitled to equitable tolling of the limitations period. The Court should disagree.

The habeas limitations provision set forth in § 2244(d) "is subject to equitable tolling in appropriate cases." *Holland v. Florida*, 130 S. Ct. 2549, 2560 (2010). To be entitled to equitable tolling of the limitations period, petitioner "must show '(1) that he had been pursing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." *Lawrence v. Florida*, 549 U.S. 327, 336 (2007) (quoting *Pace v. Diguglielmo*, 544 U.S. 408, 418 (2005)); *see also*, *Holland*, 130 S. Ct. at 2562. "The petitioner bears the burden of establishing that he is entitled to equitable tolling." *McClendon v. Sherman*, 329 F.3d 490, 494 (6th Cir. 2003). Importantly, diligence alone is not sufficient; petitioner must also show that some extraordinary circumstance prevented him from timely filing his petition. *See Mathis v. Thaler*, 616 F.3d 461, 474-76 (5th Cir. 2010) (petitioner not entitled to equitable tolling even though he had acted diligently).

---

[3]The Judges of the Michigan federal courts that have considered whether a second motion for relief from judgment rejected under Rule 6.502(G) is "properly filed" have reached conflicting decisions, but with little analysis of the issue. *Compare Smith v. Berghuis*, No. 07-14140, 2008 WL 2357696, at *2 (E.D. Mich. June 9, 2008) (Duggan, J.) (motion barred by Rule 6.502(G) is not "properly filed" and does not toll the limitations period), *Raines v. Berghuis*, No. 07-10605, 2008 WL 2157049, at *4 (E.D. Mich. May 22, 2008) (Rosen, J.) (same), *Smith v. Berghuis*, No. 1:07-CV-1179, 2008 WL 724166, at *6 (W.D. Mich. Mar. 17, 2008) (same), *and Mardenli v. Berghuis*, No. 1:07-CV-1078, 2008 WL 696600, at *5 n.3 (W.D. Mich. Mar. 13, 2008) (same), *with Christini v. McKee*, No. 01-CV-74483, 2003 WL 21817823, at *3 (E.D. Mich. July 9, 2003) (reaching opposite conclusion), *and Brown v. Burt*, 224 F. Supp. 2d 1152, 1155-56 (E.D. Mich. 2002) (Tarnow, J.). Because petitioner's application is untimely even if a second motion for relief from judgment can, as a general matter, toll the limitations period under § 2244(d)(2), the Court need not resolve this issue.

Petitioner's reply suggests that he is entitled to equitable tolling because he was only sixteen years old at the time of his conviction, and was unfamiliar with the law at the time of his direct appeals and first post-conviction motion. However, the courts have uniformly held that neither a prisoner's *pro se* status nor his lack of knowledge of the law constitute extraordinary circumstances justifying equitable tolling. *See Lattimore v. DuBois*, 311 F.3d 46, 55 (1st Cir. 2002); *Marsh v. Soares*, 223 F.3d 1217, 1220 (10th Cir. 2000); *Felder v. Johnson*, 204 F.3d 168, 171 (5th Cir. 2000); *Rodriguez v. Elo*, 195 F. Supp. 2d 934, 936 (E.D. Mich. 2002) (Rosen, J.). Further, petitioner cannot show that he acted diligently. In 1997, petitioner filed a *pro se* habeas application challenging his other convictions. Thus, at least as of this time petitioner had sufficient knowledge of the law to file a habeas petition challenging this conviction. Yet petitioner waited another 12 years to file his second state post-conviction motion, and another 14 years before he filed his federal habeas petition. Even if at some early stage of the proceedings petitioner was entitled to equitable tolling based on his youth and lack of knowledge of the law, petitioner cannot show that he acted diligently when he waited so long to file his habeas application after he became capable of doing so, as evidenced by his 1997 *pro se* filing. Accordingly, the Court should conclude that petitioner is not entitled to equitable tolling.

Although he does not argue it as a basis for overcoming the limitations period, as one of his substantive claims petitioner contends that new evidence shows that he is actually innocent. The Court should conclude that this claim does not provide a basis for ignoring the limitations bar. The Sixth Circuit has held that the actual innocence exception, which allows a court to review the merits of a habeas claim notwithstanding a procedural default, likewise exists for the habeas statute of limitations. *See Souter v. Jones*, 395 F.3d 577, 598-602 (6th Cir. 2005). In order to be entitled to the actual innocence exception, however, a petitioner must present "new and reliable evidence that was not presented at trial" that "show[s] that it is more likely than not that no reasonable juror would have

found him guilty beyond a reasonable doubt." *Schlup v. Delo*, 513 U.S. 298, 299 (1995). "To establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror would have convicted him in light of the new evidence." *Schlup*, 513 U.S. at 327 (internal citation and quotation omitted). It is not sufficient to show merely that the evidence raises a reasonable doubt which did not otherwise exist. *See id.* at 329 ("The meaning of actual innocence . . . does not merely require a showing that a reasonable doubt exists in light of the new evidence, but rather that no reasonable juror would have found the defendant guilty."). "Examples of evidence which may establish factual innocence include credible declarations of guilt by another, trustworthy eyewitness accounts, and exculpatory scientific evidence." *Pitts v. Norris*, 85 F.3d 348, 350-51 (8th Cir. 1996) (citations omitted); *accord Schlup*, 513 U.S. at 324 (referring to "exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence"). *See generally*, *Souter*, 395 F.3d at 589-90. Here, although petitioner asserts that he is innocent, he has pointed to no new, reliable evidence which clearly establishes his innocence.

Petitioner's conviction arises from the shooting death of Helen Page in Flint, Michigan. The principal evidence against petitioner came from the testimony of Darryl James, buttressed by the victim's dying declarations. James testified that petitioner, known to both him and the victim as Shorty, walked into the victim's house as he was leaving. As he was walking to his car, James heard three gunshots. Petitioner came out of the house, got into James's car, and directed him where to drive. James indicated that another person was in the house at the time, and that that person left at the same time as petitioner. James also admitted to giving three different, and at times contradictory, statements to the police. *See* Trial Tr., Vol. I, at 59-158. In addition to the testimony of James, the prosecution presented the testimony of Dr. Darryl Patterson, who treated the victim in the emergency

room. He testified that the victim said that, "Shorty shot me." *See id.* at 202.[4] Robert Wilson, the victim's neighbor, likewise testified that after hearing the shots he went outside to find the victim on the ground asking for help. The victim stated, "Shorty did it." *See id.*, Vol. II, at 239. Further, Sergeant David King testified that the victim nodded affirmatively when asked if Shorty had shot her, and mouthed the word "fifteen" when asked about Shorty's age. She shook her head to indicate "no" when asked if Shorty was 18 years old. *See id.* at 266-67.[5]

Petitioner contends that it has become well known in the neighborhood that he was framed for the victim's murder, and that the real perpetrator was either James or the other person in the house. He contends that James made new statements to people in the neighborhood indicating that James was in the house at the time of the shooting, that petitioner was not in the house at the time of the shooting, that the other person was the actually shooter, and that James was acting in concert with the shooter. *See* Memorandum of Law in Supp. of Mot. for Relief from Judgment, at 18 (attached as an exhibit to petitioner's habeas application). These assertions, however, fall far short of providing new, reliable evidence of petitioner's innocence. First, new statements from witnesses years after the crime are inherently suspect, *see Schlup*, 513 U.S. at 331, and such statements are to be viewed with "a degree of skepticism." *Herrera*, 506 U.S. at 423 (O'Connor, J., concurring); *see also*, *McCray v. Vasbinder*, 499 F.3d 568, 574 (6th Cir. 2007) (citing *United States v. Willis*, 257 F.3d 636, 645 (6th Cir. 2001). Second, much of the petitioner's claim is not new. The presence of another person in the house at the

---

[4]The victim's statement to Dr. Patterson was admitted under the excited utterance exception to the hearsay rule.

[5]Part of petitioner's defense at trial, and part of his innocence claim here, is that another person known as "Shorty" in the neighborhood, Demetrius Hunter, who was 18 or 19 years old at the time of the shooting, *see* Trial Tr., Vol. II, at 264, committed the murder. James testified that Hunter was known as "Cooter," that the victim called Hunter "Cooter," and that Hunter was not the other voice he heard in the victim's house prior to the shooting. *See id.*, Vol. I, at 140-44.

time of the shooting was established through James's own testimony at trial, and the possibility that this person was the other shooter, or that another individual known by the nickname "Shorty" was the shooter, was fully explored at trial. Third, and most importantly, as the trial court observed in rejecting petitioner's second motion for relief from judgment petitioner has presented no evidence to support his assertions. Neither the state court record nor the record in this Court contains a single statement or affidavit from James attesting to the facts asserted by petitioner, nor even a statement or affidavit from anyone recounting James's statements to them. *See Barnes v. Lafler*, No. 2:07-CV-10782, 2010 WL 1626421, at *9 (E.D. Mich. Apr. 21, 2010) (Rosen, J.) ("[A]lthough petitioner claims that the main witness who testified against him, Jacqueline Marlow, has now recanted her testimony, petitioner has not provided this Court or the state courts with an affidavit from Ms. Marlow."); *Bromell v. McNeil*, No. 07-61917-CIV, 2008 WL 4540054, at *5 n.7 (S.D. Fla. Oct. 10, 2008); *Webb v. Bell*, No. 2:07-CV-12689, 2008 WL 2242616, at *6 (E.D. Mich. May 30, 2008) (Borman, J.). In short, despite his "sweeping claims of the existence of evidence that will purportedly exonerate him, Petitioner fails to provide any affidavits . . . or any other evidence to support his claims. Petitioner's unsupported, self-serving statements are insufficient to convince the Court that 'no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt.'" *Herbert v. Jones*, 351 F. Supp. 2d 674, 678-79 (E.D. Mich. 2005) (Gadola, J.) (quoting *Schlup*, 513 U.S. at 327). Accordingly, the Court should conclude that petitioner is not entitled to consideration of his untimely petition on the basis of actual innocence.

D.    *Recommendation Regarding Certificate of Appealability*

    1.    *Legal Standard*

As amended by the Antiterrorism and Effective Death Penalty Act, section 2253 provides that a petitioner may not appeal a denial of an application for a writ of habeas corpus unless a judge issues

a certificate of appealability. *See* 28 U.S.C. § 2253(c)(1). The statute further provides that "[a] certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). As the Sixth Circuit has noted, this language represents a codification of the Supreme Court's decision in *Barefoot v. Estelle*, 463 U.S. 880 (1983), and "[t]he AEDPA thus makes no change to the general showing required to obtain a certificate[.]" *Lyons v. Ohio Adult Parole Auth.*, 105 F.3d 1063, 1073 (6th Cir. 1997); *accord Slack v. McDaniel*, 529 U.S. 473, 483 (2000). Although the statute does not define what constitutes a "substantial showing" of a denial of a constitutional right, the burden on the petitioner is obviously less than the burden for establishing entitlement to the writ; otherwise, a certificate could never issue. Rather, the courts that have considered the issue have concluded that "'[a] substantial showing requires the applicant to "demonstrate that the issues are debatable among jurists of reason; that a court could resolve the issues (in a different manner); or that the questions are adequate to deserve encouragement to proceed further."'" *Hicks v. Johnson*, 186 F.3d 634, 636 (5th Cir. 1999) (quoting *Drinkard v. Johnson*, 97 F.3d 751, 755 (5th Cir. 1996) (quoting *Barefoot*, 463 U.S. at 893 n.4)); *accord Slack*, 529 U.S. at 483-84. Although the substantive standard is the same, "[t]he new Act does, however, require that certificates of appealability, unlike the former certificates of probable cause, specify which issues are appealable." *Lyons*, 105 F.3d at 1073. (citing 28 U.S.C. § 2253(c)(3)).

Effective December 1, 2009, the newly created Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C. foll. § 2254, provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), 28 U.S.C. foll. § 2254. The rule tracks § 2253(c)(3)'s requirement that any grant of a certificate of appealability "state the specific issue or issues that satisfy the showing required by § 2253(c)(2)," Rule 11(a), but omits the requirement contained in the pre-amendment version of Federal

13

Rule of Appellate Procedure 22(b)(1) that the court explain "why a certificate should not issue." FED. R. APP. P. 22(b)(1) (version effective prior to 2009 amendment); *see id.*, advisory committee note, 2009 amendments. In light of the new Rule 11 requirement that the Court either grant or deny the certificate of appealability at the time of its final adverse order, I include a recommendation regarding the certificate of appealability issue here.

    2.    *Analysis*

Where, as here, a petition is dismissed on a procedural basis, the inquiry under § 2253(c) is two-fold. In such a case, a certificate of appealability "should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right *and* that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 485 (emphasis added). As the Court explained, "[w]here a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further. In such a circumstance, no appeal would be warranted." *Id.* at 486.

If the Court accepts the foregoing recommendation, petitioner cannot show that the Court's ruling on the procedural question is reasonably debatable. As noted above, petitioner does not challenge the conclusion that his habeas application is untimely by a number of years. Further, it is well established that a petitioner's *pro se* status and lack of knowledge of the law do not provide a basis for equitable tolling, and that petitioner was able to pursue a separate habeas corpus proceeding challenging different convictions during the time in which the limitations period was still running. Thus, the conclusion that petitioner is not entitled to equitable tolling is not reasonably debatable. Finally, because much of petitioner's purported evidence of innocence was presented at trial, and

14

because petitioner has failed to present any evidence, in the form of affidavits or otherwise, in support of his innocence claim, the conclusion that petitioner has failed to establish his actual innocence is not reasonably debatable. Accordingly, the Court should conclude that petitioner is not entitled to a certificate of appealability.

E.     *Conclusion*

In view of the foregoing, the Court should conclude that petitioner's application for the writ of habeas corpus is barred by the statute of limitations governing habeas petitions. Accordingly, the Court should grant respondent's motion for summary judgment and dismiss the petition. If the Court accepts this recommendation, the Court should also deny the certificate of appealability..

III.    NOTICE TO PARTIES REGARDING OBJECTIONS:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in FED. R. CIV. P. 72(b). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Federation of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address

specifically, and in the same order raised, each issue contained within the objections.

                                        s/Paul J. Komives  
                                        PAUL J. KOMIVES  
                                        UNITED STATES MAGISTRATE JUDGE

Dated: 12/14/11

---

The undersigned certifies that a copy of the foregoing order was served on the attorneys of record and by electronic means or U.S. Mail on December 14, 2011.

                                  s/Eddrey Butts  
                                  Case Manager